UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

J.P., *individually and on behalf of J.J., a child with a disability*,

Plaintiffs,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

---

21 Civ. 10961 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion for attorneys' fees and costs in this action under the Individuals with Disabilities Education Act of 1990 ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*[1]  Plaintiff J.P. sued the New York City Department of Education ("DOE") after being awarded independent evaluations and related accommodations for her disabled child, J.J. (together with J.P., "plaintiffs"), in an administrative hearing before an independent hearing officer ("IHO").  Plaintiffs request attorneys' fees and costs, totaling $34,062.30, covering both the underlying administrative proceeding and this action, as well as pre- and post-judgment interest on that sum.

For the reasons below, the Court grants the motion for fees and costs with post-judgment interest, but in a sum below that sought.

---

[1] The IDEA, Pub. L. No. 108–46, 118 Stat. 2647 (2004), reauthorized (and amended) the IDEA. This decision refers to the updated version of the statute.

## I.    Background[2]

### A.    The IDEA Action and Proceedings Before the IHO

J.J. is a child with a disability covered by the IDEA.  56.1 ¶ 2.  J.P. is J.J.'s parent.  *Id.*
¶ 1.  On July 17, 2020, J.P. filed a due process complaint ("DPC") with DOE.  *Id.* ¶ 6; *see id.*
¶¶ 7–10.  It alleged that DOE had failed to provide J.J. with a free appropriate public education
("FAPE") pursuant to the IDEA during the 2020–2021 school year.  *Id.* ¶ 8.  The DPC requested
that DOE fund J.J.'s tuition at the Rebecca School for that school year, either by reimbursing
J.J.'s tuition or directly paying the school for tuition and associated school costs.  *Id.* ¶ 9.

On January 29, 2021, IHO Suzanne Carter, *id.* ¶ 10, presided over a due process hearing
(the "administrative proceeding") on the merits of J.J.'s claims, *id.* ¶ 12.  Prior to the hearing,
DOE had not responded to plaintiffs' DPC.  *Id.* ¶ 11.  At the hearing, plaintiffs entered 14

---

[2] The summary is drawn primarily from the parties' submissions in support of and in opposition
to plaintiffs' motion for summary judgment.  These include: (1) in support of plaintiffs' motion
for summary judgment, a memorandum of law, Dkt. 27 ("Mot."), a Local Rule 56.1 statement,
Dkt. 26 ("56.1"), and the declarations of Benjamin Kopp, Dkt. 20, Adrienne Arkontaky, Dkt. 21,
Andrew Cuddy, Dkt. 22 ("Cuddy Decl."), Kevin Mendillo, Dkt. 23 ("Mendillo Decl."), Jennifer
Ratcliff, Dkt. 24, and Gina DeCrescenzo, Dkt. 25; and (2) in opposition, a memorandum of law,
Dkt. 34 ("DOE Opp."), and the supporting declarations of Martin Bowe, Dkt. 31, Netanel Munk,
Dkt. 32 ("Munk Decl."), Emily Goldman, Dkt. 33, and W. Simone Nicholson, Dkt. 35.

Here, plaintiffs' Rule 56.1 statement describes itself as a "statement of material facts not in
dispute."  *See* 56.1 (header).  Although that document was not jointly submitted or expressly
adopted by DOE, DOE has not disputed, or otherwise responded to, plaintiffs' submission.  Nor
did it file a 56.1 statement of its own.  Insofar as plaintiffs' Rule 56.1 statement is not disputed
and is supported by admissible evidence, the Court finds the facts therein true.  *See* S.D.N.Y.
Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the
statement required to be served by the moving party will be deemed to be admitted for purposes
of the motion unless specifically controverted by a correspondingly numbered paragraph in the
statement required to be served by the opposing party.").  "[W]hile a court 'is not required to
consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its
discretion opt to 'conduct an assiduous review of the record' even where one of the parties has
failed to file such a statement."  *Holtz v. Rockefeller & Co, Inc.*, 322 F.3d 139, 140 (2d Cir.
2003) (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)).

documents into evidence and presented testimony. *Id.* ¶ 13. On February 22, 2021, plaintiffs submitted a six-page closing brief. *Id.* ¶ 14. DOE did not submit a closing brief. *Id.* ¶ 15.

On March 21, 2021, the IHO issued a final decision ordering DOE to fund or reimburse J.J.'s tuition, related services, and registration fee for J.J.'s attendance at the Rebecca School for the 2020–2021 academic year. *Id.* ¶¶ 16–17.

### B.   Procedural History of the Fees Action in this Court

On December 21, 2021, plaintiffs filed this action. Dkt. 1. They sought attorneys' fees and costs. *Id.* On February 16, 2022, DOE answered. Dkt. 8. On July 18, 2022, plaintiffs filed a motion for summary judgment, Dkt. 19, and, in support, a memorandum of law and supporting declarations, Dkts. 20–25. On August 16, 2022, DOE filed its opposition, Dkt. 34, along with supporting declarations, Dkts. 31–33, 35. On August 29, 2022, plaintiffs replied. Dkt. 37.

## II.   Applicable Legal Principles

### A.   IDEA Claims

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'" *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)). States that receive certain federal funds must "offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child." *Polera v. Bd. of Educ.*, 288 F.3d 478, 482 (2d Cir. 2002). Parents are entitled to bring complaints regarding the "provision of a free appropriate public education" to their child, 20 U.S.C. § 1415(b)(6), and to have those heard by an IHO, *id.* § 1415(f)(1); N.Y. Educ. L. § 4404(1); *see also A.R.*, 407 F.3d at 72.

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (citation omitted). However, under the IDEA, if a parent of the child with a disability is the "prevailing party" in the litigation, the district court has discretion to award the parent "reasonable attorneys' fees" and costs incurred. 20 U.S.C. § 1415(i)(3)(B)(i); *see also J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 121 (2d Cir. 2002). The award may cover work performed before (1) the IHO, (2) the State Review Officer ("SRO"), (3) the district court, and (4) on appeal. *See A.R.*, 407 F.3d at 84 (affirming award of fees incurred during IHO proceedings and before district court, and remanding to consider whether fees should be awarded for work during Second Circuit appeal); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 437 (S.D.N.Y. 2012) (awarding fees for work conducted in SRO proceeding). Prevailing parties are also entitled to reimbursement for the reasonable costs incurred in litigating an IDEA case. *G.B.*, 894 F. Supp. 2d at 443.

To determine the award and the amount of fees, the court must engage in a two-step inquiry. First, it must determine whether the party seeking to enforce the fee-shifting provision is the "prevailing party." *Mr. L. v. Sloan*, 449 F.3d 405, 405–07 (2d Cir. 2006). Second, it must determine whether the party "should be awarded attorneys' fees." *Id.* In determining whether fees should be awarded, and in what amount, the court examines whether the fees are reasonable in light of the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court has the discretion to reduce the award if the fees or hours reported are excessive or misleading. *Id.* at 437; *see* 20 U.S.C. § 1415(i)(3)(F) (requiring court to reduce attorneys' fees awarded upon findings of, *inter alia*, excessive reported or hourly rates); *see also id.* § 1415(i)(3)(G) (exception

to subsection (F) where state or local agency unreasonably protracts final resolution of action or proceeding).

### B.    Prevailing Party

To be a prevailing party under the IDEA, a plaintiff must achieve (1) "some material alteration of the legal relationship of the parties" that is (2) "judicially sanctioned." *A.R.*, 407 F.3d at 67. The Second Circuit has held that a party who receives agency-ordered relief on the merits of their claim is a "prevailing party" for the purposes of IDEA. *Id.* at 75. A party need not recover on all claims to be considered the "prevailing party." *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12 Civ. 6313 (DLC), 2013 WL 4766339, at *5 (S.D.N.Y. Sept. 5, 2013), *aff'd*, 584 F. App'x 17 (2d Cir. 2014) (summary order). But, she "must succeed on a significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.*

### C.    Calculation of Fees

The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar is not "conclusive in all circumstances," and may be adjusted when it fails to "adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 167 (internal citation omitted).

#### 1.    Reasonable Hourly Rates

Under the fee-shifting provision of the IDEA, the court determines a reasonable hourly rate "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). A reasonable rate is one a reasonable, paying-per-hour client would pay for the same services rendered. *K.F. v. N.Y.C.*

5

*Dep't of Educ.*, No. 10 Civ. 5465 (PKC), 2011 WL 3586142, at *3 (S.D.N.Y. Aug. 10, 2011), *adhered to as amended*, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). The community used for purposes of IDEA fee-shifting litigation is the district in which the issue arose—specifically, where the student was denied a FAPE. *Id.* at *2. However, in determining reasonable hourly rates, it is also important to look to the area of legal practice at issue. That is because legal markets are today so interconnected that it is no longer meaningful, in assessing a reasonable rate, to look at geographic location alone. *See Arbor Hill*, 522 F.3d at 192.

In determining a reasonable rate, district courts are also to consider case-specific variables known as the "*Johnson* factors." These include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. "A district court need not 'recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award.'" *E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5243 (GBD) (FM), 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014) (quoting *Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009)).

### 2.   Reasonable Hours

Once a reasonable rate of pay has been calculated, it is multiplied by a reasonable number of hours expended to determine the award amount. The Court has the discretion to disregard hours viewed as "excessive, redundant, or otherwise unnecessary." *Bliven v. Hunt*, 579 F.3d

204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).  To determine the reasonableness of

hours spent on a matter, "[t]he district court may attempt to identify specific hours that should be

eliminated, or it may simply reduce the award" by a reasonable percentage.  *Hensley*, 461 U.S. at

436–37; *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr.*

*Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a

percentage deduction as a practical means of trimming fat from a fee application."); *J.R. v.*

*N.Y.C. Dep't of Educ.*, No. 19 Civ. 11783 (RA), 2021 WL 3406370, at *5 (S.D.N.Y. Aug. 4,

2021) (citing cases).  "[T]rial courts need not, and indeed should not, become green-eyeshade

accountants.  The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing

perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### D.    Costs

A district court may also award reasonable costs to the prevailing party.  20 U.S.C.

§ 1415(i)(3)(B)(i)(I).  The term "costs" includes costs incurred in connection with work yielding

fees covered by a fee award,[3] as well as the specific types of costs set out in 28 U.S.C. § 1920,

the general provision governing the taxation of costs in federal court.  *See Arlington Cent. Sch.*

*Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297–98 (2006); *G.B.*, 894 F. Supp. 2d at 443.

Commonly compensable costs include reasonable filing and process server costs.  *See* 28 U.S.C.

§ 1920; *G.B.*, 894 F. Supp. 2d at 443; *M.K.*, 578 F. Supp. 2d at 434.

---

[3] The principles articulated in *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998),
control as to out-of-pocket expenses other than expert-witness fees.  There, the Second Circuit
held that an award includes those reasonable out-of-pocket expenses incurred by attorneys and
ordinarily charged to their clients. *Id.* at 763; *see M.K. ex rel. K. v. Sergi*, 578 F. Supp. 2d 425,
433–34 (D. Conn. 2008).

## III.    Discussion

### A.    Overview of the Attorneys' Fees and Costs Request

It is undisputed that J.P. prevailed in the proceeding before the IHO.  *See* 56.1 ¶ 17.  The IHO ordered DOE to fund or reimburse J.J.'s tuition, related services, and registration fee for attendance at the Rebecca School for the 2020–2021 school year.  *Id.*  The issue before this Court therefore concerns whether plaintiffs' fee and cost applications are reasonable.  As to both, J.P. seeks compensation for work performed before the IHO in the administrative proceeding, and in this follow-on fees litigation.

As to the administrative proceeding, J.J. seeks a fee award reflecting hours worked by three attorneys (Kevin Mendillo, Andrew Cuddy ("Cuddy"), and Justin Coretti) and five paralegals or attorneys performing administrative work (Britton Bouchard, Allyson Green, Cailin O'Donnell, Shobna Cuddy ("S. Cuddy"), and ChinaAnn Reeve).  In the administrative hearing, Mendillo served as lead counsel.  Mendillo Decl. ¶ 10.  He led preparation, communicated with DOE and J.P., attended the due process hearing, and drafted the DPC and closing brief.  *Id.* ¶¶ 11, 24–26.  Plaintiffs seek an award for the following work during that proceeding.[4]

---

[4] The charts here, documenting the fees sought in both the administrative proceeding and the instant action, capture data in Cuddy's declaration.  *See* Cuddy Decl. ¶ 52; *id.*, Exs. 1–2.

| Attorneys' Fees:  Administrative Proceeding | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy | $550.00 | 2.6 | $1,430.00 |
| Justin Coretti | $425.00 | 0.2 | $85.00 |
| Kevin Mendillo | $450.00 | 45.2 | $20,340.00 |
| Subtotal | | 48 | $21,855.00 |
| **Paralegal Fees:  Administrative Proceeding** | | | |
| **Paralegal** | **Rate** | **Hours** | **Total** |
| Britton Bouchard | $225.00 | 0.3 | $67.50 |
| Allyson Green | $225.00 | 4.8 | $1,080.00 |
| Cailin O'Donnell | $225.00 | 1.1 | $247.50 |
| Shobna Cuddy | $225.00 | 2.4 | $540.00 |
| Subtotal | | 8.6 | $1,935.00 |
| **Total** | | **56.6** | **$23,790.00** |

As to the litigation before this Court, Mendillo again served as lead attorney.  Mendillo Decl. ¶ 1.  Plaintiffs seek an award for the following work:

| Attorneys' Fees:  Southern District of New York | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy | $550.00 | 2.6 | $1,430.00 |
| Kevin Mendillo | $450.00 | 17.50 | $7,875.00 |
| Subtotal | | 20.1 | $9,305.00 |
| **Paralegal Fees:  Southern District of New York** | | | |
| **Paralegal** | **Rate** | **Hours** | **Total** |
| ChinaAnn Reeve | $225.00 | 1.1 | $247.50 |
| Shobna Cuddy | $225.00 | 1.2 | $270.00 |
| Cailin O'Donnell | $225.00 | 0.2 | $45.00 |
| Subtotal | | 2.5 | $562.50 |
| **Total** | | **22.6** | **$9,867.50** |

Plaintiffs thus request a total in fees of $33,657.50: $23,790 for the administrative case and $9,867.50 for the fees litigation in this Court.  Cuddy Decl. ¶ 52; *see also id.*, Exs. 1–2.

Plaintiffs also seek reimbursement for costs incurred during both phases, amounting to $404.80.  These include a $2.80 postage fee during the administrative proceeding and a $402 filing fee for this litigation.  Mot. at 21 (citing Cuddy Decl. ¶ 52; *id.*, Exs. 1–2).

| Costs | |
|---|---|
| **Expense** | **Total** |
| Postage | $2.80.00 |
| SDNY Filing Fee | $402.00 |
| **Total** | **$404.80** |

The Court begins by determining the reasonable hourly rates for the relevant timekeepers, a point on which the parties' views are far apart. The Court then addresses DOE's objections to paying for certain hours billed; its request for an across-the-board fee reduction; and plaintiffs' request for costs.

**B.     Reasonable Rates**

The Court has considered all *Johnson* factors in its analysis for each timekeeper. Its discussion here centers on the facts it has found determinative.

**1.     Analysis Applicable to All Timekeepers**

IDEA litigation is undoubtedly a specialized field in which attorneys seek to vindicate vitally important interests of children in need of special education. Plaintiffs, however, have not produced any evidence that, relative to a typical single-plaintiff IDEA case, this case presented novel or complex legal or factual issues.

During the administrative proceeding, the IHO held only one hearing: the substantive due process hearing. Munk Decl. ¶¶ 8–9. During that 90-minute session, DOE did not contest the relief sought or present any witnesses, and it cross-examined only one witness. *Id.* ¶ 8. Like many other cases, the relief requested was a tuition reimbursement. This case was largely uncontested, with only a single issue unresolved at the time of the due process hearing: the appropriateness of J.J.'s placement in the Rebecca School. *Id.* ¶¶ 8, 13. This case, the Court

finds, thus did not present complex legal or factual issues.[5] *See J.R.*, 2021 WL 3406370, at *4

("[T]his appears to have been a fairly standard action for special education and related

services[,] . . . [as] [d]efendant did not put on any witnesses nor present any evidence and agreed

to most of [p]laintiff's requests before the [decision] was issued" and "the administrative

proceedings in this case took less than two hours"). Nor is there any indication that, in taking on

or pursuing this case, the Cuddy Law Firm was inhibited from taking on other work. These facts

bear on the hourly rates reasonable here and the hours for which a fee award is warranted. *See*

*H.A.*, 2022 WL 580772, at *5.

The relevant community for the purposes of determining a reasonable rate is the Southern

District of New York, where both this litigation and the underlying administrative proceeding are

centered.[6] The relevant practice area is special education law, specifically IDEA litigation. In

recent years, "[t]he prevailing market rate for experienced, special-education attorneys in the

New York area . . . [has been] between $350 and $475 per hour." *J.R.*, 2021 WL 3406370, at *3

---

[5] Plaintiffs state that the hearing "was complicated by the fact that it involved tuition
reimbursement/payment for [p]laintiff[s]' unilateral placement of J.J. at a private school." Mot.
at 15. But that was the *sole* unresolved issue as of the start of the hearing. The placement issue,
a familiar one in IDEA litigation, does not make the litigation complex. Plaintiffs also note that
because DOE "did not stipulate to the appropriateness of the program offered," they were
"required to prepare a case in order to meet her burden of proof." *Id.* at 16. DOE's refusal to
stipulate undoubtedly forced plaintiffs' counsel to do added work, but that does not mean that
such work was unusually complex for IDEA work. *See H.A. v. N.Y.C. Dep't of Educ.* ("*H.A.*"),
No. 20 Civ. 10785 (PAE), 2022 WL 580772 (S.D.N.Y. Feb. 25, 2022) (rejecting similar
argument from Cuddy Law Firm in context of an "uncontested" administrative proceeding).

[6] DOE claims that Northern District of New York rates should apply because Cuddy Law Firm is
based there. But "an out-of-district attorney may be entitled to receive a higher rate when
practicing in this district than the rate . . . he or she ordinarily receives in the community in
which he or she usually practices." *H.A.*, 2022 WL 580772, at *5 n.6 (quoting *K.F. v. N.Y.C.
Dep't of Educ.*, No. 10 Civ. 5465 (PKC), 2011 WL 3586142, at *2 (S.D.N.Y. Aug. 10, 2011),
*adhered to as amended*, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011)). The administrative and
litigation proceedings in this case were all in the Southern District.

(citing *M.D. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 417 (JMF), 2018 WL 4386086, at *3

(S.D.N.Y. Sept. 14, 2018) (collecting cases)); *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17

Civ. 7632 (PAE), 2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018) (same); *H.A.*, 2022 WL

580772, at *5. "Paralegals, depending on skills and experience, have generally garnered

between $100 and $125 per hour in IDEA cases in this District." *J.R.*, 2021 WL 3406370, at *3

(quoting *R.G. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *3

(S.D.N.Y. Sept. 26, 2019) (collecting cases)).

### 2.   Andrew Cuddy

Plaintiffs seek an hourly rate for Andrew Cuddy of $550; DOE suggests $375/hour is

appropriate. *Compare* Mot. at 17, *with* DOE Opp. at 3.[7]  Cuddy is an experienced attorney in

special education law.  He is a 1996 law school graduate who has been litigating special

education matters since 2001.  Cuddy Decl. ¶¶ 36, 40.

Courts in this District have recently awarded Cuddy $350–$375 per hour, despite

consistent requests by his firm for more than $500 per hour.  *See H.A.*, 2022 WL 580772, at *6

($375 per hour); *J.R.*, 2021 WL 3406370, at *4 ($350 per hour); *M.D. v. N.Y. Dep't of Educ.*, No.

20 Civ. 6060 (LGS), 2021 WL 3030053, at *3 (S.D.N.Y. July 16, 2021) ($375 per hour); *H.C. v.

N.Y.C. Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at *6 (S.D.N.Y. June 17,

2021) ($360 per hour); *S.J. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1922 (LGS) (SDA), 2020 WL

6151112, at *4 (S.D.N.Y. Oct. 20, 2020), *report and recommendation adopted as modified*, 2021

WL 100501 (S.D.N.Y. Jan. 12, 2021) ($360 per hour); *R.G.*, 2019 WL 4735050, at *3 ($350 per

hour); *M.D.*, 2018 WL 4386086, at *3 ($360 per hour).

---

[7] Applying Northern District of New York rates, DOE asks that Cuddy be assigned a rate of $275. DOE Opp. at 9.  As noted, however, the Southern District is the applicable market.

Such rates are consistent with awards granted in IDEA cases, including those litigated by the Cuddy Law Firm, in cases where, as here, liability is essentially uncontested. *See M.H. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031, at *13 (S.D.N.Y. Oct. 1, 2021) (awarding Cuddy $420 per hour in case involving contested hearing, including presentation and cross-examination of witnesses, and distinguishing "essentially uncontested" cases where courts awarded fees of $375 and $360 per hour); *C.D.*, 2018 WL 37669972, at *2, *7 (awarding Cuddy $400 per hour in IDEA case with a far more complex procedural history, including its contested nature and 11 days' worth of hearings).[8]

These precedents, along with the *Johnson* factors, make a rate of $375 per hour for Cuddy's work reasonable.[9] *See M.D.*, 2021 WL 3030053, at *3 ("The hourly rate applied in cases of similar size and complexity as this one—in which Defendant conceded failure to provide a FAPE at the first hearing and presented no witnesses—is generally in the $350 to $400 range for experienced attorneys like . . . [Cuddy].").

### 3.    Kevin Mendillo

Plaintiffs seek an hourly rate for Kevin Mendillo of $450; DOE urges $300. *Compare* Mot. at 15, *with* DOE Opp. at 3. Mendillo is a 2010 law school graduate who has been a member of the bar since 2011. He has been with Cuddy Law Firm specializing in special

---

[8] In support of the rate they push, plaintiffs rely on *Y.G. v. New York City Department of Education*, No. 21 Civ. 641 (AKH), 2022 WL 1046465 (S.D.N.Y. Apr. 7, 2022), in which Judge Hellerstein upheld the Cuddy Law Firm's requested rates as reasonable. But there, "the administrative hearing was heavily contested and required the skill of an experienced IDEA litigator to prevail, as there were multiple days of hearings and five hearings on the merits." *Id.* at *2. That case was far more complex than this. And its result is an outlier among the cases involving fee requests for the Cuddy Law Firm.

[9] Plaintiffs argue that rising inflation favors a higher rate. As reflected in the analysis above, however, the issue before the Court turns on market comparable rates, whether driven by inflation, other factors, or a combination.

education law since 2014 and has participated in over 100 impartial due process hearings. Mendillo Decl. ¶¶ 3–4.

Mendillo is a mid-level associate whose experience is less than Cuddy's, but more than that of a junior associate. Accordingly, his rate should be less than Cuddy's ($375), but above that of a junior associate ($150–275). *See C.D.*, 2018 WL 3769972, at *7 ("For associates with three or fewer years of experience in such litigation, courts in this District have typically approved rates of $150–$275." (internal citation omitted)); *L.V. v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 519–20 (S.D.N.Y. 2010) (awarding $275 for junior attorney with one-to-three years' experience). Mendillo's award therefore falls between $275 and $375 per hour.

As explained above, this case did not present novel or complex questions and was not in any way out of the ordinary. Courts in this District have recently awarded fees of $300 per hour for Mendillo's work as lead counsel in successful but routine administrative proceedings. *See, e.g.*, *L.L. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 2515 (JPO), 2022 WL 392912, at *3 (S.D.N.Y. Feb. 9, 2022) (awarding Mendillo $300 because of his experience and because "the DPC did not raise especially novel or complex issues and DOE did not oppose Plaintiff's positions at the two-hour hearing"); *R.P. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 4054 (JMF), 2022 WL 1239860, at *1, *4 (S.D.N.Y. Apr. 27, 2022) (awarding $300 in routine case where DOE did not contest relief); *H.C.*, 2021 WL 2471195, at *5 (awarding $300 in a "minimally contested" case featuring one objection); *see also R.G.*, 2019 WL 4735050, at *3 (awarding $300 per hour to a CLF associate with similar special education litigation experience in case where DOE "did not meaningfully oppose the plaintiff's positions at the impartial hearing," but did contest necessity of an individualized education program).

These precedents, and the *Johnson* factors, favor a $300 hourly rate as reasonable.

### 4. Justin Coretti

Plaintiffs seek an hourly rate for Justin Coretti of $425 per hour; DOE suggests $200.
*Compare* Mot. at 15, *with* DOE Opp. at 3. Coretti is a 2012 law school graduate who has
litigated special education matters since 2015. Cuddy Decl. ¶ 14; *see also J.R.*, 2021 WL
3406370, at *4 (setting $250 per hour rate for Coretti where $350–$375 per hour was requested);
*M.H.*, 2021 WL 4804031, at *14 (setting hourly rate at $280 where Coretti worked on
administrative stage of IDEA case, including by preparing witnesses and attending hearings).
Coretti performed virtually no work on this case, billing only 0.2 hours to the administrative
action and none in the litigation in this Court. Cuddy Decl. ¶ 52. Given his level of experience
and the *Johnson* factors, the Court finds an hourly rate of $275 for Coretti reasonable. *See H.A.*,
2022 WL 580772, at *7 (setting rate of $275 for Coretti for nearly identical work).

### 5. Britton Bouchard, Shobna Cuddy, Cailin O'Donnell, Allyson Green, ChinaAnn Reeve

Plaintiffs seek an hourly rate of $225 for paralegals S. Cuddy, Cailin O'Donnell, Allyson
Green, and ChinaAnn Reeve, and for attorney Britton Bouchard; DOE suggests $100. *Compare*
Mot. at 18, *with* DOE Opp. at 3. Bouchard is a 2019 law school graduate employed by Cuddy
Law Firm between April 2020 and January 2022, Cuddy Decl. ¶ 15, who performed purely
administrative work in this case, *id.* ¶ 52. S. Cuddy is the firm's senior paralegal and has worked
there as a paralegal and office manager since 2007. *Id.* ¶ 17. O'Donnell has a bachelor's
degree. *Id.* ¶ 18. Reeve holds an associate degree. *Id.* ¶ 19. Plaintiffs do not indicate how long
O'Donnell and Reeve have worked at the firm or other qualifications and have not provided any
information on Green's qualifications. *See generally id.*

This Court has repeatedly admonished Cuddy Law Firm for proposing a $225 hourly rate
for paralegals, which "far exceeds the prevailing rate in this District, as reflected in numerous

recent decisions." *See, e.g., H.A.*, 2022 WL 580772, at *8. Decisions involving the firm's IDEA work have instead approved fee awards reflecting hourly rates of $100 to $125 for paralegal work. *See, e.g., id.* (awarding $125 hourly rate for experienced paralegal with over a decade of experience and a $100 hourly rate for paralegals or one year or only entry-level qualifications); *C.D.*, 2018 WL 3769972, at *7 (same); *J.R.*, 2021 WL 3406370, at *4 (awarding $100 per hour for paralegals in IDEA case); *H.C.*, 2021 WL 2471195, at *7 (same); *M.D.*, 2018 WL 4386086, at *3 (awarding $100–120 per hour for paralegals); *S.J.*, 2020 WL 6151112, at *5 (same). And this case did not entail any of the more demanding tasks for paralegals presented by trial work, which, in commercial cases, has sometimes resulted in approvals of $200 rates for significantly experienced paralegals. *Cf. Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56–57 (S.D.N.Y. 2015).

Consistent with these authorities, the Court finds $125 per hour a reasonable rate for work in this matter by an experienced paralegal with more than entry-level experience. That applies to Bouchard and S. Cuddy.[10] As to the remaining paralegals, however, such a rate is not sustainable (and the $225 rate plaintiffs seek is all the more unsustainable). Plaintiffs bear the burden of providing evidence to support a fee application, including as to the timekeeper's relevant qualifications and experience. *See Torres v. City of New York*, No. 07 Civ. 3473 (GEL), 2008 WL 419306, at *2 (S.D.N.Y. Feb. 14, 2008) ("Although it is his burden to do so, plaintiff presents no evidence regarding the skills, qualifications, or experience of the paralegal here."). When such evidence has not been provided, courts typically award fees at the bottom of the

---

[10] S. Cuddy has recently been awarded $100 for her paralegal work. *See H.A.*, 2022 WL 580772, at *8; *C.D.*, 2018 WL 3769972, at *7. But she now has the same years of experience and substantially the same qualifications as other paralegals from Cuddy Law Firm for whom a $125 rate has been approved. *See H.A.*, 2022 WL 580722, at *7–8 ($125 rate for paralegal Woodard, who has over a decade of experience).

customary fee range. *See L.V.*, 700 F. Supp. 2d at 523 ("If plaintiffs had provided no information about the paralegals' levels of experience, an award at the lower end of the range might be appropriate."); *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *5 (S.D.N.Y. Sept. 29, 2009) ("While defendants are correct that the burden is on the moving party to show that the requested fees are reasonable, plaintiffs' request of $100 per hour is on the low end of the customary range in this district and therefore commensurate with the presumed inexperience of plaintiffs' paralegal staff."); *Torres*, 2008 WL 419306, at *2 ("compensation must be made near the lower end of the market range" given lack of evidence regarding paralegals' qualifications). Plaintiffs have not shown that Reeve, O'Donnell, or Green have more than entry-level qualifications, or established their years of experience in relevant paralegal work. This warrants an hourly rate of $100 for each of them.

### C.    Reasonable Hours

The Court considers the reasonable hours in light of the demands of this IDEA matter. As noted, the underlying IDEA litigation was straightforward. It entailed a single 90-minute merits hearing, in which DOE did not contest the relief sought, examined one of plaintiffs' two witnesses, and did not present witnesses of its own. Munk Decl. ¶¶ 8, 13; *see also* DOE Opp. at 4. There was only one unresolved issue at the time of the hearing: the appropriateness of the Rebecca School placement. Munk Decl. ¶¶ 8, 13; *see also* DOE Opp. at 4. Plaintiffs submitted a closing brief; defendant did not. 56.1 ¶¶ 14–15; Munk Decl. ¶ 8.

The Cuddy Law Firm billed, and seeks recompense, for 48 hours of attorney time and 8.6 hours of paralegal time in connection with the administrative proceeding, and 20.1 hours of attorney time and 2.5 hours of paralegal time before this Court. Cuddy Decl. ¶ 52. DOE argues that the reported hours at both stages were excessive. DOE Opp. at 3. For the reasons below,

the Court agrees that the hours billed for the administrative proceeding were excessive, and that the hours billed for this litigation, although closer to reasonable, were somewhat excessive, too.[11]

### 1.    Administrative Proceeding

DOE is correct to contend that, in several respects, the Cuddy Law Firm's fee request reflects excessive hours with respect to the administrative proceeding.

First, the firm billed more than 20 hours preparing for the hearing, not including time spent preparing for the (ultimately cancelled) pre-hearing conference. *See* Cuddy Decl., Ex. 1 at 2–15. It billed a total of eight hours to put together the hearing request alone,[12] an additional 8.1 hours for trial and witness preparation,[13] and more than seven hours for tasks such as reviewing correspondence, sending emails, and filing.[14] Although most attorney time was incurred before learning that DOE would not contest liability, the hearing at all times concerned a single issue:

---

[11] Cuddy, in a declaration, touts that he "personally review[s] every billing entry and reduce[s] or eliminate[s] entries that have the appearance of being clerical, duplicative, vague, 'block-billed,' inefficient, or otherwise non-compensable." Cuddy Decl. ¶¶ 49–51. That is commendable but also expected of counsel. The issue for the Court is not how many excess hours were removed but whether the hours on which the fee application is based are reasonable.

[12] The billing statement reflects time entries of 2.0 hours, 1.1 hours, and 3.5 hours to draft the hearing request. The firm also billed 0.3 hours for reviewing individualized educational plan material relevant to the request, 0.8 hours for reviewing the hearing request, and 0.3 hours for revising the request. Cuddy Decl., Ex. 1 at 5–6. This adds up to eight hours.

[13] The firm billed 1.1 and 1.3 hours for drafting the parents' testimony, 2.5 hours for drafting the testimony of the Rebecca School administrator and 0.4 hours for preparing her over the phone, 1 hour for developing a trial plan, 1.1 hours for drafting the opening statement, and 0.7 hours to prepare for the hearing the day prior. Cuddy Decl., Ex. 1 at 8, 12–13. This adds up to 8.1 hours.

[14] The firm billed for the following administrative tasks: preparing and filing disclosures (time entries of 0.2 hours, 0.1 hours, 1.1 hours, 0.8 hours, 0.7 hours, and 0.3 hours); reviewing hearing requests (0.5 hours); reviewing emails (time entries of 0.4 hours, at least two entries of 0.2 hours, and at least four entries of 0.1 hours); and emailing the IHO and clients (more than 10 entries of 0.2 or 0.1 hours). Cuddy Decl., Ex. 1 at 2–15. This adds up, conservatively, to 7.9 hours.

the appropriateness of J.J.'s placement at the Rebecca School.  Plaintiffs do not persuasively explain why it took seasoned counsel more than 20 hours to defend that conclusion.

On top of that, the firm billed five hours to draft the due process complaint (excluding time spent emailing and performing clerical tasks related to it).  *See id.*, Ex. 1 at 3, 5–6.[15]  The complaint consists of a 2.5-page statement of basic facts, a 2.5-page recitation of familiar legal arguments, and a brief statement of the (also familiar) relief requested.  In light of Mendillo's extensive experience—consisting of over 100 impartial due process hearings, Mendillo Decl. ¶ 4—the firm does not explain why this amount of time was necessary to draft the document.  *See C.B. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *11 (S.D.N.Y. July 2, 2019) (reducing Cuddy Law Firm's hours billed by 75% for preparing boilerplate complaint "nearly identical to complaints in at least ten other cases").

After the hearing, the firm billed an extra seven hours to draft the 5.5-page closing brief.  Cuddy Decl., Ex. 1 at 13–14.[16]  The argument section of this brief covered just over two pages.  The remainder of the brief largely summarized the uncontested hearing.  Mendillo Decl., Ex. 2.  Given Mendillo's extensive IDEA litigation experience, the simplicity and uncontested nature of this case, and the similarity of this case to others the firm has handled, the firm does not satisfactorily explain why it reasonably took seven hours to prepare this short document, which

---

[15] The firm billed 0.3 hours and 0.4 hours for reviewing records in preparation for the Complaint; 3.1 hours and 1.0 hour to draft the Complaint; and 0.2 hours to prepare the Complaint for filing.  Cuddy Decl., Ex. 1 at 3, 5–6.  This adds up to 5 hours.

[16] The firm billed 0.8 hours and 1.0 hour to review material and develop the outline of the closing brief; and 1.5, 0.5, and 3.2 hours to draft the closing brief.  Cuddy Decl., Ex. 2 at 13–14.  This adds up to 7 hours.

largely consisted of familiar legal principles and points made in the opening submission, such as

the proposition that the fees attributable to such work should be shifted to the City.

Finally, the billing statement is replete with time entries in increments of 0.10 hours for

minor tasks. *Cf. C.D.*, 2018 WL 3769972, at *8–9 (deducting half of reported hours tallied from

0.10-hour increments where billing records reflected multiple 0.10-hour increments on the same

day, given that "such a practice can improperly inflate the number of hours billed beyond what is

appropriate"). Cuddy Law Firm billed 0.10 hours each for minor tasks like reviewing directions,

uploading, organizing, and receiving documents, drafting minor emails, reviewing

correspondence, and more. Cuddy Decl., Ex. 1. at 3–15. In total, there are 48 entries of 0.10

hours. Just shy of 25% of the 0.10-hour entries were incurred by the same timekeeper on the

same day but not consolidated. *Id.*, Ex. 1 at 3–15. By their nature, some such tasks "could likely

have been discharged in seconds," rather than taking 6 minutes each, and "a reasonable paying

client would expect a timekeeper to consolidate such tasks into a single time entry, rather than

paying for a series of 0.10-hour time entries." *H.A.*, 2022 WL 580772, at *9. There is no

indication that the Cuddy law firm attempted to do so. To that extent, "it is not reasonable to

expect DOE to absorb such costs." *Id.*[17]

Considering these factors, and the overall lack of complexity of this action, the Court

finds an across-the-board 20% reduction to make the Cuddy Law Firm's claimed hours in the

administrative proceedings reasonable. That aligns with prior decisions from courts in this

---

[17] To be sure, a client such as J.J. is at liberty to tolerate such billing practices and pay the firm
based on the full hours that counsel billed. But for purposes of a fee-shifting award, "a client's
tolerance is not the measure of reasonableness." *H.A.*, 2022 WL 580772, at *9; *see, e.g.,*
*HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 599 (S.D.N.Y. 2021) ("For their
services, HomeAway is a free agent, at liberty to pay Gibson Dunn the rates it negotiates. It is,
however, unreasonable to the point of audacity to ask New York City to bear these rates under
§ 1988.").

District pruning the firm's compensable hours by 20% to achieve reasonableness. *See, e.g.*, *J.R.*, 2021 WL 3406370, at *5 (reducing firm's claimed hours by 20% where counsel prepared for uncontested hearing); *M.D.*, 2021 WL 3030053, at *5 (same where counsel prepared for an uncontested 3-hour hearing); *H.C.*, 2021 WL 2471195, at *8 (same where three hearings were held and DOE agreed to several of plaintiffs' demands before the first hearing); *R.G.*, 2019 WL 4735050 at *3–4 (same where four hours of hearings were held and City introduced one witness). A 20% reduction here is particularly warranted given the level of expertise of lead counsel Mendillo, who had worked at the firm for more than eight years and had handled more than 100 IDEA impartial hearings, Mendillo Decl. ¶¶ 3–4, and whose hours comprised more than 85% of the firm's claimed attorney hours at the administrative proceeding stage.[18] Finding that the work at this stage could have been done by such an attorney in materially fewer hours, the Court imposes a 20% reduction in the compensable hours, "to do rough justice." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### 2.     Fee Litigation Before This Court

Courts in this District have similarly reduced hours to achieve reasonableness where the hours reportedly spent litigating the "simple and straightforward issue" of the prevailing-party reasonable fees and costs in the underlying administrative proceeding were excessive. *J.R.*, 2021 WL 3406370, at *6 (quoting *S.J.*, 2020 WL 6151112, at *6).

---

[18] Instructively, in a similarly straightforward case in which the firm sought a fee award based on similar claimed hours, this Court reduced the firm's requested fee award by 20% because of the inexperience of the lead attorney. *See H.A.* 2022 WL 580772, at *10 ("A greater [than 20%] reduction would have been in order but for the welcome fact—for which the Cuddy Law Firm deserves credit—that the firm, rather than leaving this matter in the hands of partners, tasked a more junior lawyer, Kopp, with most administrative-stage work.").

Such, the Court finds, is the case here, albeit by a more modest margin than in some prior cases. The Cuddy Law Firm billed 2.2 hours for drafting, reviewing, and filing a boilerplate five-page, double-spaced complaint.[19]  Cuddy Decl., Ex. 2 at 2; *see H.A.*, 2022 WL 580772, at *10 (reducing claimed hours by 20% where Cuddy Law Firm billed six hours for drafting a 15-page document that "consisted of a long series of single-sentence paragraphs that chronologically traced the administrative phase of the case, followed by largely boilerplate recitations of the two causes of action, each customary for IDEA litigation"); *see also C.B.*, 2019 WL 3162177, at *11 (it "should not have taken [the lawyer] 1.5 hours to write the short complaint that started this federal action").  Also unexplained is why it was necessary for S. Cuddy to spend 1.2 hours and Cuddy an additional 0.5 hours to produce the administrative billing statement, Cuddy Decl., Ex. 2 at 3, 7, even though these records were purportedly created contemporaneously, Cuddy Decl. ¶ 2 ("I maintain my time entries directly on the computer, with all entries into the computer file made contemporaneously."); Mendillo Decl. ¶ 5 ("My billable time is kept contemporaneously and maintained on the computer software maintained by the Firm for that purpose.").

Courts in this District have often reduced the Cuddy Law Firm's claimed fees at the fee-litigation stage by 20% to 25%, based on similar practices. *See, e.g., H.A.*, 2022 WL 580772, at *11 (reducing fees for the federal litigation across-the-board by 20%); *M.D.*, 2021 WL 3030053, at *6 (same); *J.R.*, 2021 WL 3406370, at *5 (reducing fees for the federal litigation by 25%); *see also HomeAway.com*, 523 F. Supp. 3d at 593 (reducing fee award by 25%); *Beastie Boys*, 112 F. Supp. 3d at 57 (reducing fee award by 30% and citing cases).  The Court will impose a lesser

---

[19] Specifically, the firm billed 1.0 hour to draft the federal complaint, 0.1 hours to revise it, 0.4 hours to review it; and 0.2 hours, 0.2 hours, and 0.3 hours to prepare, reformat, and file the summons and civil cover sheet.  Cuddy Decl., Ex. 2 at 4–6.

haircut here. That is because the aggregate hours spent on the federal action were smaller: a total of 22.6 hours, across lawyers and paralegals. Cuddy Decl. ¶ 52. Although the inefficiencies or unexplained hours above warrant some pruning, the aggregate hours spent at this stage were not facially outlandish. They fall short of the hours claimed by the firm in cases where courts have imposed greater percentage reductions. *See, e.g., B.B. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4255 (VEC), 2018 WL 1229732, at *3 (S.D.N.Y. Mar. 8, 2018) ("[A] competent attorney should not have needed more than 40 hours to litigate [a] fee petition."); *see, e.g., H.A.*, 2022 WL 580772, at *11 (reducing Cuddy Law Firm's fees by 20% when firm billed 68.5 hours on the fee litigation alone in simple and uncontested case, translating to a total of 54.8 hours credited for the fee litigation); *M.D.*, 2021 WL 3030053, at *6 (reducing hours credited for fee litigation from 76.2 to 38.3 hours due to the case's "low degree of complexity"); *R.G.*, 2019 WL 4735050, at *5 (reducing 59.9 hours credited for fees litigation to 44.2 hours given case's simplicity); *J.R.*, 2021 WL 3406370, at *6 (reducing hours credited for fees litigation from 82.8 hours to 62.1 hours); *M.H.*, 2021 WL 4804031, at *21, *24 (reducing hours credited for fees litigation from 260.5 hours to 194.83 hours). The Court will reduce the fees for this stage by 10%.

### 3. Costs

Plaintiffs request a total of $404.80 in costs, consisting of a $2.80 postage fee during the administrative component and a $402 filing fee during the federal component. Mot. at 21; Cuddy Decl. ¶ 52. Such costs are compensable. *See, e.g., H.A.*, 2022 WL 580772, at *11 (determining that "postage costs . . . are reasonably included in the award" and shifting such costs and filing fees to the City). This Court therefore shifts $404.80 in costs to the city.

### 4. Pre- and Post-Judgment Interest

Plaintiffs seek pre- and post-judgment interest. In previous cases where the Cuddy Law Firm has sought pre-judgment interest, plaintiffs "ha[d] not cited any IDEA case in this Circuit

where it was awarded, or explained why such an award is necessary here for [plaintiff] to be adequately compensated." *H.A.*, 2022 WL 580772, at *11; *see also S.J.*, 2020 WL 6151112, at *7 (declining to award pre-judgment interest for similar reasons). Here, however, plaintiffs contend that DOE "unreasonably delayed settlement negotiations by failing to substantively respond to Plaintiff's fee demand submitted on September 30, 2021 . . . necessitating the filing of the inst[ant] federal action after no substantive response was received from Defendant nearly three months later." Mot. at 22. In support, plaintiffs point to a case in which pre-judgment interest was awarded under the IDEA. *Id.* (referencing *J.R.*, 2021 WL 3406370, at *6).

The Court exercises its discretion not to award pre-judgment interest. "The law is unsettled in the Second Circuit on whether a court may add prejudgment interest to an attorneys' fee award." *M.H.*, 2021 WL 4804031, at *29 (analyzing in detail statutory and case authority on including pre-judgment interest in a fee award in an IDEA case, and denying request for as much). "[I]n IDEA cases, as in other fee-shifting contexts, the Court should take into account 'delay' by using current rates in calculating a 'reasonable' attorneys' fee." *Id.* at *31. But the one in which a court in this District awarded a pre-judgment interest on this basis involved a delay in fee payments of more than one year. *See J.R.*, 2021 WL 3406370, at *2 (fee demand was submitted to DOE on November 17, 2018; federal action commenced on December 23, 2019). Here, however, the gap between the demand for payment, and the filing of this lawsuit, was less than three months. The fee request was filed on September 30, 2021, Cuddy Decl. ¶ 28; the complaint was filed on December 21, 2021, Dkt. 1. The Court thus elects to follow the far more common practice of declining to award pre-judgment interest. *See, e.g., H.A.*, 2022 WL 580772, at *11; *M.H.*, 2021 WL 4804031, at *31; *S.J.*, 2021 WL 100501, at *5.

The Court does award, as required, post-judgment interest. *See* 28 U.S.C. § 1961; *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.") (quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)); *see also S.J.*, 2021 WL 100501, at *5.

## IV.   Bottom-Line Calculations

The charts below summarize the Court's award of fees and costs, taking into account the rulings above. These include: (1) the hourly rates as determined by the Court, (2) the across-the-board 20% reduction in the total fee award during the administrative proceeding, and (3) the 10% reduction in the total fee award during the federal component.

| Attorneys' Fees:  Administrative Proceeding | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy | $375.00 | 2.6 | $975.00 |
| Justin Coretti | $275.00 | 0.2 | $55.00 |
| Kevin Mendillo | $300.00 | 45.2 | $13,560.00 |
| Subtotal | | 48 | $14,590.00 |
| Subtotal (post-reduction) | | -20% | $11,672.00 |
| **Paralegal Fees:  Administrative Proceeding** | | | |
| **Paralegal** | **Rate** | **Hours** | **Total** |
| Britton Bouchard | $125.00 | 0.3 | $37.50 |
| Shobna Cuddy | $125.00 | 2.4 | $300.00 |
| Allyson Green | $100.00 | 4.8 | $480.00 |
| Cailin O'Donnell | $100.00 | 1.1 | $110.00 |
| Subtotal | | 8.6 | $927.50 |
| Subtotal (post-reduction) | | -20% | $742.00 |
| **Total** | | | **$12,414.00** |

| Attorneys' Fees:  Southern District of New York | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy | $375.00 | 2.6 | $975.00 |
| Kevin Mendillo | $300.00 | 17.5 | $5,250.00 |
| Subtotal | | 20.1 | $6,225.00 |
| Subtotal (post-reduction) | | -10% | $5,602.50 |
| **Paralegal Fees:  Southern District of New York** | | | |
| **Paralegal** | **Rate** | **Hours** | **Total** |
| Shobna Cuddy | $125.00 | 1.2 | $150.00 |
| Cailin O'Donnell | $100.00 | 0.2 | $20.00 |
| ChinaAnn Reeve | $100.00 | 1.1 | $110.00 |
| Subtotal | | 2.5 | $280.00 |
| Subtotal (post-reduction) | | -10% | $252.00 |
| **Total** | | | **$5,854.50** |

| Costs | |
|---|---|
| **Expense** | **Total** |
| Postage | $2.80 |
| SDNY Filing Fee | $402.00 |
| **Total** | **$404.80** |

## CONCLUSION

For the reasons reviewed above, the Court awards plaintiffs a total of $18,673.30[20] in

reasonable attorneys' fees and costs with post-judgment interest.  The Clerk of Court is

respectfully directed to terminate all pending motions and to close this case.

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: March 10, 2023
       New York, New York

---

[20] A court may not award attorneys' fees and related costs "subsequent to the time of a written offer of settlement to a parent if" it "finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(d)(i). DOE asked that "in the event that this Court awards a total amount under $16,500 for all work performed up through July 18, 2022—the date of the formal settlement offer . . . . CLF should not be compensated for work performed after July 18, 2022." DOE Opp. at 22. That principle does not apply here, because the Cuddy Law Firm's last billed item is dated July 18, 2022. It does not seek compensation for work after that date. Cuddy Decl., Ex. 2 at 7.